**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000482
06-MAY-2022
07:56 AM
Dkt. 87 SO**

NO. CAAP-21-0000482

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF CS, WS, KS1, KS2

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 17-00106)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and McCullen, JJ.)

Mother-Appellant (**Mother**) appeals from the Family Court of the First Circuit's (**Family Court**)[1] August 13, 2021 Order Terminating Parental Rights, August 13, 2021 Letters of Permanent Custody, and September 23, 2021 Findings of Fact and Conclusions of Law, terminating her and Father-Appellee's (**Father**) parental rights to CS, WS, KS1, and KS2 [collectively **Children**].

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's arguments below and affirm.[2]

---

[1] The Honorable Jessi L.K. Hall presided.

[2] For organization, we address Mother's arguments out of order from how they appear in her Opening Brief.

(1) Mother contends the Family Court prevented her from fully cross-examining one of the resource caregivers regarding the safety of their home.

The "[d]iscretion resides within a trial court to determine the scope and extent of cross examination." In re Doe, 100 Hawaiʻi 335, 346 n.23, 60 P.3d 285, 296 n.23 (2002) (citing HRE Rule 1101 (1993)); Doe v. Doe, 98 Hawaiʻi 144, 154–55, 44 P.3d 1085, 1095–96 (2002). Here, the Family Court appears to have limited Mother's cross-examination because Mother's questions of whether two adults were in the home at all times or whether the resource caregivers were open to voluntary continued contact with Mother post-termination were irrelevant to whether the permanent plan is in Children's best interests.

Notably, the Family Court permitted Mother to cross-examine one of the resource caregivers on issues related to the safety and appropriateness of the resource caregivers' home, including whether they allowed Father to come to the house, had to undergo a criminal background check, and had to ask other people to watch Children for them. The Family Court did not abuse its discretion in limiting the cross-examination.

(2) Mother contends the record lacks clear and convincing evidence supporting findings of fact (**FOF**) 95 and 96, which found:

> 95. [Mother] and [Father] are not presently willing and able to provide the Children with a safe family home, even with the assistance of a service plan.
>
> 96. It is not reasonably foreseeable that [Mother] and [Father] will become willing and able to provide the Children with a safe family home, even with the assistance of a service plan.

2

Mother contends she completed her services and made substantial progress in demonstrating her ability to provide a safe family home.

However, the Family Court did not clearly err as many unchallenged findings constitute substantial evidence supporting FOF 95 and 96. In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001). Specifically, for over three years, DHS offered Mother services to help resolve her safety issues, FOF 77-78, 89, 104, 119, 133-34, 138-40, and 169-72; Mother fails to recognize and address her safety concerns and failed to meaningfully engage in services, FOF 55, 58, 74, 76-79, 119-21, 124, 137, 229, 237, 239-46, 248-58, and 260-63; Mother lacks insight into Children's needs and refuses to acknowledge their educational, medical, and psychological issues despite completing parenting classes, FOF 58, 68-70, 77-79, 111, 113-15, 120-21, 124, 132, 137-40, 142, 147, 153-59, 168-72, 183, 195-97, 211-14, 222-26, 235, 237-50, 252-57, and 261-64; Mother has a history of domestic violence relationships, and despite completing domestic services, she entered into another violent relationship, FOF 74-76, 78, 86-90, 119-21, 124-26, 129, 137-38, 157, 175-78, 232, 234, and 260; Mother failed to attend Children's appointments and was not consistent or attentive during visits, FOF 77-80, 113-18, 120-21, 139, 148-52, 159, 169-72, 183, 195-97, 200-01, 204, 208, 250-53, 256-57, and 265, and for over four years by the time trial concluded, FOF 64, and in that time, Mother was unable to parent Children and meet their needs, FOF 77-79.

(3) Mother contends the Family Court abused its discretion in terminating a related case in the middle of trial, where the cases were being tried together, and if she had known beforehand, she would have devoted more time to the instant case.

The record does not reflect, and Mother does not contend, that she objected to the amount of trial days remaining in her case or requested additional time to present her defense. Thus, she failed to preserve this argument. See State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]").

(4) Mother contends DHS failed to provide her reasonable reunification efforts and opportunities, arguing that (a) DHS should have offered her more time to work on reunification and visits due to Covid, (b) DHS hindered visitation by requiring a visitation contract, (c) DHS should have provided in-person visits despite the pandemic, (d) although Mother's and the resource caregivers' relationship soured, DHS allowed the resource caregivers to control appointments and visits, (e) DHS failed to provide recommended attachment-based services, as they were never delineated in Mother's service plans, (f) DHS provided no specific road map to demonstrate Mother's abilities, and (g) DHS failed to provide Mother a reasonable opportunity to attend Children's therapy sessions because it provided no referral or plan to do so. Relatedly, Mother challenges FOF 97, 103, 105, 106, and 107.[3]

---

[3]  Mother also challenges FOF 202 and 203, but this appears to be a mistake.  Mother argues, "There existed compelling reason for the DHS not to
(continued...)

While "DHS is under an obligation to provide a reasonable opportunity to parents through a service plan to reunify the family" and "to make reasonable efforts to reunite parent and child," an objection to DHS's reasonable efforts or a claim for additional services must be timely made or the issue is waived.  See In re Doe, 100 Hawaiʻi at 343-44, 60 P.3d at 293-94.

Here, Mother waived her challenges to DHS's reasonable efforts by not making timely requests for services, objecting to the Family Court's findings of reasonable efforts, or otherwise raising the issue of insufficient services.  Although Mother contends she objected to reasonable efforts "through motions, contested trials, mediation and at hearings," her only supporting record citations are to three hearing transcripts, none of which contain an objection to reasonable efforts or to the service plan, or a request for additional services.

Even if not waived, these arguments are contradicted by unchallenged findings of fact, which are binding on this court. See In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002) (unchallenged findings of fact are binding on appeal).  For example, Mother was unable to state why she should have more time to provide a safe family home, FOF 262; Mother declined to participate in virtual visits, FOF 252; Mother rejected an offer for family therapy with Children, FOF 245, 255; and although the

---

file its [Motion to Terminate] as the DHS failed to provide timely referrals for necessary, appropriate and reasonable services including reasonable visitation [FOF 202 & 203]."  But FOF 202 and 203 do not relate to the Motion to Terminate or to reasonable efforts.

resource caregivers set Children's appointments, Mother failed to appear at and participate in them and failed to acknowledge Children's medical and developmental needs, FOF 77, 246, 247.

(5) Mother contends the record lacks clear and convincing evidence the permanent plan is in Children's best interests because a resource care-giver testified that she attended Father's recent wedding and told CSA about it, which contradicts her testimony that she would not allow Father around Children; and the permanent plan does not require continuing contact with Mother, despite the importance of maintaining family relationships. These arguments concern her challenges to FOF 99 and 100,[4] which provide:

> 99. The permanency goal of the March 2, 2020 Permanent Plan is adoption. The permanent plan goal of adoption is in accord with the [Hawaii Revised Statutes (**HRS**)] § 587A-32(a)(3) presumption that the goal of adoption is in the Children's best interests.
>
> 100. The Permanent Plan, dated March 2, 2020, with the permanency goal of adoption, is in the Children's best interests.

Mother fails to show where in the record she preserved these arguments; thus, they are waived. Moses, 102 Hawaiʻi at 456, 77 P.3d at 947. Even if not waived, given the two youngest Children's ages at the time of foster placement and the length of time Children were in foster care, the Family Court's decision is in accordance with the statutory presumptions of HRS § 587A-33(a)(3)(A) and (B) (2018).

For the foregoing reasons, we affirm the Family Court's August 13, 2021 Order Terminating Parental Rights, August 13,

---

[4] Though Mother identifies FOF 98 and 99 as the challenged FOF, this appears to be an error.

2021 Letters of Permanent Custody, and September 23, 2021

Findings of Fact and Conclusions of Law.

DATED:  Honolulu, Hawaiʻi, May 6, 2022.

On the briefs:

Crystal M. Asano,
for Mother-Appellant.

Simeona A. Mariano
Julio Cesar Herrera,
Deputy Attorneys General,
for Department of Human
Services-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge