*** FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-12-0000808
28-NOV-2014
08:07 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

AC, Respondent/Plaintiff-Appellee,

vs.

AC, Petitioner/Defendant-Appellant,

and

CHILD SUPPORT ENFORCEMENT AGENCY, STATE OF HAWAIʻI,
Respondent/Defendant.

SCWC-12-0000808

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000808; FC-P NO. 11-1-6307)

NOVEMBER 28, 2014

RECKTENWALD, C.J., NAKAYAMA, AND McKENNA, JJ., AND
CIRCUIT JUDGE TRADER, IN PLACE OF ACOBA, J., RECUSED,
WITH POLLACK, J., CONCURRING SEPARATELY

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case requires us to consider the circumstances

under which a family court can limit the time for trial on a

petition to determine custody over minor children. Father and Mother, who were never married, are the biological parents of two minor children, Son and Daughter. Mother and Father eventually separated, and Father sought custody of Son and Daughter. The instant appeal arises out of Father's Petition for Custody, Visitation and Support Orders After Voluntary Establishment of Paternity, which sought sole physical and legal custody of the children, and sought to exclude Mother from visitation.

Prior to and during the pendency of the proceedings on Father's petition, Father and Mother filed several competing petitions for orders of protection against each other. The family court granted Father's petition for an order of protection against Mother. Thereafter, Father relocated with Son and Daughter to Texas without obtaining prior authorization of the family court.

The family court considered Mother's and Father's competing custody petitions during a trial that lasted approximately three hours on June 25, 2012. It appears from the record that the family court had set a three-hour limit beforehand. Although Father was able to present his evidence, the family court cut short Mother's evidence despite her motion for additional time, and awarded sole legal and physical custody to Father. A divided panel of the Intermediate Court of Appeals (ICA) affirmed that decision.

Mother asserts that the family court erred by strictly enforcing a preset time limit that was too short given the complexity of the case, and excluded critical testimony bearing upon the best interests of Son and Daughter. We agree with Mother. While trial courts are given considerable discretion in managing their calendars, the family court's strict enforcement of the time limit here unduly curtailed Mother's ability to present evidence relevant to the proper determination of the children's best interests. Accordingly, we vacate the ICA majority's decision and remand to the family court for further proceedings.

## I.  Background

The following factual background is taken from the record on appeal.

Mother and Father apparently began dating in 2005 and had two children together:  Son, who was born in 2005, and Daughter, who was born in 2008. Mother and Father separated in 2009, and Mother thereafter lived with Son, Daughter, and Mother's child from a previous relationship ("Older Son"). Father subsequently married another woman and lived with his wife and Stepdaughter in Texas. In the summer of 2011, Father, his wife, and Stepdaughter relocated to Hawaiʻi.

## A.    Family court proceedings

Upon relocating to Hawaiʻi, Father filed a petition for an order of protection against Mother on behalf of himself, Son, Daughter, and Stepdaughter.  The family court issued a temporary restraining order.  Approximately one month later, Father filed a Petition for Paternity or for Custody, Visitation and Support Order After Voluntary Establishment of Paternity, which is the subject of the instant appeal.  Father's custody petition sought full physical and legal custody of Son and Daughter, and sought to preclude visitation by Mother due to allegations of "[r]eckless child endangerment and neglect and failure to provide a safe and enriching environment for the children."

Mother filed a competing custody petition, also seeking full physical and legal custody of Son and Daughter.  Mother also filed a petition for an order of protection against Father on behalf of herself, Son, Daughter, and Older Son.  The family court issued a temporary restraining order on behalf of Mother and Older Son.

At the conclusion of a trial on Mother's and Father's petitions for an order of protection, the family court denied Mother's petition on the grounds that Mother was not credible and did not establish her need for an order of protection.  The family court granted Father an order of protection against Mother, but removed Son and Daughter from the order.  The family

-4-

court found there was past domestic abuse and a threat of harm to Father from Mother, but that there were no safety concerns for Son and Daughter. Since Son and Daughter were already in the custody of Father, no custody orders were entered at the time.

Thereafter, Mother filed a motion to modify visitation, which sought to change the third party responsible for supervising her visitation with Son and Daughter. Mother complained that her visits were supervised by the pastor of Father's church and held at the pastor's apartment, where the children "were required to do church related activities for the first hour" of the two-hour visit. Mother also declared that she was prohibited from giving the children food or taking pictures with them. During a subsequent visit, the pastor presented Mother with a document entitled "Visitation Rules" that purported to set forth rules imposed by the family court judge, including that Mother had to speak English at all times, that conversations between Mother and the children must be audible to supervising personnel, and that Mother's two-hour visits were to include one hour of "class work" for the children.

According to Mother, two days after the visit involving the "Visitation Rules," police officers arrested her after Father notified them she had violated the family court's temporary restraining order. The day after Mother was released from custody, she had another visit with Son and Daughter, during

-5-

which police officers again arrived, this time informing Mother that Father had reported her for violating the temporary restraining order and had provided the time and place of her visit with the children.

On the same day Mother's motion to modify visitation was filed, the family court held a return hearing regarding the State Custody Investigation Unit's (CIU) report on the custody of the children. Father was not present at the hearing, and his counsel informed the court that he had relocated with Son and Daughter to Texas. Father did not have the court's permission to remove Son and Daughter from Hawaiʻi, and the family court's minutes reflect that removal of the children was in violation of the court's order.[1] Father was ordered to return the children to Hawaiʻi within 30 days unless an order allowing relocation pending trial was granted before then.

The family court scheduled Mother's and Father's custody petitions for a "half-day trial." The record does not reflect the basis for this limitation, or whether either party voiced any concern about it.

The CIU report noted Mother's and Father's "concerns" regarding the other's parenting. For example, Father was

---

[1] The family court minutes state that, "Court noted Mother has not filed a motion for sanctions against Father for removing the children from the state of HI but the Court does find Father did violate the Court's order by doing so." The family court's order prohibiting the removal of the children from Hawaiʻi is not included in the record on appeal.

concerned that Mother did not emphasize education, was physically and emotionally abusive (particularly when "menstruating or pregnant"), abused drugs and alcohol, lied, was unstable, and exposed the children to a "sexual lifestyle." Father also expressed concern that Older Son was a danger to Son and Daughter, but the CIU noted that a case involving allegations of sexual assault by Older Son against Son and Daughter had been closed by HPD and that the prosecutor's office had declined to accept the case. Father reported four incidents of domestic violence by Mother against Father.

Mother expressed her concern that Father had extreme anger issues, was abusive, did not provide a good example to the children, did not provide the children with educational activities despite his claim that he homeschooled them, had unstable relationships with women, and was never the children's primary caretaker. Mother reported over 50 incidents of domestic violence by Father against Mother. Mother also alleged that Father was abusive to Older Son.

The CIU report indicated that interviews with the children could not be conducted because Father and the children had relocated to Texas. According to the report, the CIU also could not conduct a home visit with Father due to his relocation. Additionally, no home visit with Mother could be conducted because she had relocated to Washington, and later to Sweden.

Nevertheless, the CIU report recommended that Father have sole legal and physical custody of the children, and be permitted to relocate with the children to Texas, with Mother allowed unsupervised visitation.

Father subsequently filed a motion to allow the children to remain in Texas, which the family court granted. Father was awarded temporary sole legal and physical custody pending trial, with Mother allowed telephone and internet visits. The CIU was ordered to interview the children and to prepare a supplementary report prior to trial. The children were never interviewed.

Prior to trial, Mother submitted a witness list that included nine lay witnesses and two expert witnesses. Father submitted a witness list that included three lay witnesses.

The family court held a bench trial on the competing custody petitions. At the start of trial, the court did not address the length of trial or state on the record the amount of time available for trial. The court stated that it was most interested in testimony regarding the respective abilities of Mother and Father to care for Son and Daughter, so that it could determine "whether or not you're the right choice as a dad or you're the right choice as a mom to have the custody."

Father testified that he lived with his mother, wife of three years, Stepdaughter, and Son and Daughter in Texas, where

he cared for Son and Daughter during the day and worked at night providing security and other services at a restaurant. Father stated that he could financially provide for the children in Texas because of his "massive support system in Texas."

Father testified that Son and Daughter told him they had been sexually abused while in Mother's custody, and that the children are currently receiving psychological counseling for the alleged abuse. Father stated his fear that Son and Daughter would be exposed to "things of a sexual nature" if Mother were to have unsupervised visitation with Son and Daughter. According to Father, Mother came to the United States as a "mail order bride" from Russia, and had worked as a stripper, escort, and masseuse. Father asked that Mother only be allowed supervised visitation of children if he was awarded custody because he was very concerned that Mother would take the children to Estonia or Sweden.

Father called no additional witnesses. The court noted that by this point Father had used 50 minutes of the time allocated, and Mother had used 25 minutes in cross-examining Father, which was the court's first indication on the record regarding how much time was available for the proceedings.

Mother's first witness was a male friend who had known Mother for fourteen years and considered her a very good parent. He testified that he visited Mother in Hawaiʻi several times and that it appeared the children were properly fed, clothed, and

washed.  He recounted several times when Mother stayed with him after complaining of abuse by Father.  On one occasion, he noticed bruises on her arms that he attributed to Father's physical abuse of her.

The court custody investigator who prepared the CIU report testified next.  The investigator recalled Mother's allegations that Father abused her, including incidents in which Father almost killed her by strangulation or suffocation, but the investigator was not sure whether she believed Mother.  The investigator also recalled Mother's 15-year-old Older Son telling her that Father physically abused Mother three times per week.  The abuse purportedly involved Father slapping, punching, and throwing things at Mother.  Older Son told the investigator that he saw Mother with bruises and black eyes, and that Father had once chased him with a handgun.  Next, the investigator related her interview with Older Son's father, who allegedly had observed Mother with black eyes and bruises.

The investigator also testified about her interview with Father's former wife, who told the investigator that Father had shoved, hit, and kicked her, and had pointed a gun at her during their relationship.  Father's former wife also told the investigator that, after their relationship had ended, Father falsely accused her of physically abusing their children. Father's former wife feared Father would retaliate against her

for telling the investigator about these issues.  The investigator also acknowledged that she had not personally visited Father's home in Texas to investigate or verify the children's living conditions there.

Before Mother's counsel called her next witness, the court warned him that time for witness testimony would be limited, stating:  "We're going to finish this case at 4:30 today, so, Counsel, use your time wisely.  Because if we don't get to an opportunity to hear from your client, that will be based upon your choice."

The next witness, a former neighbor of Mother's, testified that her children often played with Mother's children, and that the children appeared to be well cared for.  The neighbor opined that Mother was a very good mother, and that she observed no behavioral or emotional problems with Son or Daughter.  At the conclusion of the neighbor's testimony, the court again warned of time constraints, and the following exchange occurred:

> THE COURT:  Okay.  By my count you guys are about equal on time.  So, um, who's your next witness?
>
> [MOTHER'S COUNSEL]:  Okay.  Next would be [another friend of Mother's].
>
> THE COURT:  Because we will end and make a decision by 4:30, so you have 32 minutes.  That includes cross-examination.

Another friend of Mother's testified that he had known Mother for approximately nine years, and that he had also observed bruises on Mother's body.

Mother then testified on direct examination that she wanted sole physical and legal custody of Son and Daughter and had provided for the children in the best way she could. Mother feared she would have no relationship with Son and Daughter if Father gained sole custody of them. Mother testified that she had lived with Father in Texas but left with the children for Hawaiʻi in 2009 because he was physically and emotionally abusive. As Mother explained the children's schooling in Hawaiʻi, their daily routines, and weekend activities, the court interrupted and the following exchange between the court and Mother's counsel occurred:

> THE COURT: Counsel, you have two minutes left.
>
> [MOTHER'S COUNSEL]: Your Honor, I'm going to move for an extension of time. Um, the reason is -- -
>
> THE COURT: Throughout -- okay. Tell me why because I know that each and every step of this trial I told you it was going to be equal amount of time. We started at 4:04, and breaking down the remainder of time into 4:30, which the court said we would be done [sic], that split equally.
>
> Now if he finishes his cross-examination early, then you have the balance of that time. But each and every of the other witnesses I said we're running on a time crunch. Um, you know, I gave you that opportunity. <u>You still decided to call the other witnesses</u>. So --
>
> [MOTHER'S COUNSEL]: I understand.
>
> THE COURT: -- we're gonna --

> [MOTHER'S COUNSEL]: I understand, Your Honor. But each witness was important, and that witness had something to say about domestic violence.
>
> THE COURT: I understand. But you still -- we still have the time constraints that we do have. You knew about them. So, as counsel, you were permitted to use time as you felt, uh, you needed to use them best. So I allowed you to do that. So continue. Use the rest of your time wisely.
>
> [MOTHER'S COUNSEL]: Um, so what is -- is the motion -- you're not ruling at this time?
>
> THE COURT: Well, I cannot go beyond 4:30.

(Emphasis added).

Mother testified that she did not intend to flee the country with her children. As Mother was testifying about how infrequently she had been able to speak to the children, the court again interrupted and ordered Mother's counsel to stop direct examination:

> THE COURT: Okay, Counsel, you're over your time. You have one more question.
>
> [MOTHER'S COUNSEL]: Um, is it sufficient being able to see your kids only on phone and on Skype? Is that enough for you?
>
> THE WITNESS: Of course not.
>
> [MOTHER'S COUNSEL]: Thank you.
>
> THE COURT: That was your last question.
>
> THE WITNESS: (Inaudible) never was part --
>
> THE COURT: Okay. Hold on, ma'am.
>
> Now -- I mean we went -- you had to 4:17 and were given three minutes to 4:20.
>
> Counsel, cross-examination.

As Father's counsel was cross-examining Mother, the court interjected and told the parties that the testimony was

-13-

over:

THE COURT:  One last question.

[FATHER'S COUNSEL]:  Thank you.

Um, [Mother], you've heard your ex tell this court all of the things he's done in Texas, all of the improvements the children have made, their living situation, the support network, the socialization network, the activities network.  Please tell this judge what you heard that would require him to remove the children from [Father] and give them to you.

THE WITNESS:  The difference is that (inaudible) the paper and which is I --

[FATHER'S COUNSEL]:  I'm asking --

THE COURT:  Okay.  That's it.

[FATHER'S COUNSEL]:  -- what's happened in Texas --

THE COURT:  Wait.  Hold on.  Testimony is over.

[FATHER'S COUNSEL]:  Thank you, Judge.

THE COURT:  It's 4:30.  Please have a seat, ma'am.

[MOTHER'S COUNSEL]:  Your Honor --

THE COURT:  Yes.

[MOTHER'S COUNSEL]:  -- again I would renew my motion for an extension of time.  Three hours is not enough for this trial.  This trial involves complex issues.

THE COURT:  Why -- why didn't -- why wasn't that motion done prior to trial today?  We brought somebody back from Texas.  I've ordered the two children back here.  This isn't like we have local people here where we can continue it, you know, in a week or two.  It would be at his expense.

[FATHER'S COUNSEL]:  Your Honor, it was enough for us.

THE COURT:  So we -- I mean this is something that if we were going to go and expand this for more than the time allotted today, that's why I kept on trying to tell you get -- you know, to the -- I wanted to hear about the two parents.  I wanted to hear from dad.  I wanted to hear from mom.  I wanted to hear

-14-

from the custody evaluator. Unfortunately the other three witnesses took up time that otherwise could have been allocated to mom.

But if there was some other situation, I may be inclined. But we have dad flying back here from Texas. I ordered the two children. They flew back from Texas. To have them come back another time because the allocation of time wasn't properly used would be unfair to especially the children. So with that -- that being said, um, the request for an extension of trial time is -- is denied.

During Mother's closing argument, Mother revisited the issue of Father's alleged domestic violence, and the following exchange occurred:

[MOTHER'S COUNSEL]: Further there is evidence in this case that father is abusive, that father was abusive to [Mother], to [Older Son], and he exposed the children to his anger and violence.

This is a concern that needs to be taken seriously. Mother is --

THE COURT: How was -- how was that proven?

[MOTHER'S COUNSEL]: That was proven through the testimony of witnesses and through the interview.

THE COURT: What witnesses? 'Cause I don't have -- my notes don't indicate any witness said that they either got a statement from father or actually saw him physically abuse mother.

[MOTHER'S COUNSEL]: We had several witnesses who stated that they observed mother with bruises.

THE COURT: But they never said how she got them.

[MOTHER'S COUNSEL]: They were immediately after separating from father. The circumstantial evidence shows that those injuries were from father. She left father in an emotional state and then they saw her with the bruises right afterward.

[Older Son] is the best witness as to the abuse. He was there and his report is in the investigations reported.

THE COURT: Where is [Older Son] today to testify? He's old enough to testify.

-15-

> [MOTHER'S COUNSEL]: [Older Son] is in Sweden.
> And that was not done.

Mother moved for a guardian ad litem to be appointed for the children, and there was further discussion about Father's alleged abuse and the amount of time allowed for trial:

> [MOTHER'S COUNSEL]: Now if the court is not inclined to award custody to mother, I would suggest due to the complexity of this case that a GAL be appointed for these children. When the children are returned to Hawaiʻi, a GAL can meet with them.
>
> They can sort through the issues. Because really we haven't heard from the kids. We haven't. Through this whole case we haven't heard from the kids. We haven't through this whole case we haven't heard from the kids. And that's an important issue.
>
> Mother's willing to pay for half. Father makes three thousand dollars per month. If he could pay for half of this, I think it would be the best solution for determining the final outcome in this case.
>
> THE COURT: Okay. And, Counsel, then with respect to that issue, father filed his petition August 10, 2011. Mother filed her petition August 26, 2011. We're close to the end of June 2011 [sic], about ten months later. Why hasn't the request for a GAL with respect to the children ever been made for the last ten months?
>
> [MOTHER'S COUNSEL]: Due to the circumstances of this case, we did not know that father was going to take the children to Texas.
>
> THE COURT: Okay. You guys knew as soon as December 2011. In fact it's almost June 25th. It's six months to the day you've known that father had children in Texas. We came here for a motion I believe in March. Uh, mom's motion was denied. Father's motion for temporary relocation pending trial was granted given the kids['] current therapy treatment.
>
> But at that time there was no request for an extension of the trial date or to move it. There was no request to expand the amount of time to see if we could get multiple dates to have a trial. There was no request for a guardian ad litem to be appointed for the kids. All of those things I could have addressed and would have addressed had all of these issues been brought up instead of the day of trial. So --

> [MOTHER'S COUNSEL]: But it is not too late, you know.
>
> THE COURT: The trial is over.
>
> [MOTHER'S COUNSEL]: But the request is being made now as part of my closing that a GAL be appointed.
>
> THE COURT: An oral -- an oral motion without a written motion is being made now?
>
> [MOTHER'S COUNSEL]: That is correct. And it's based on the circumstances of what happened in this case. The request before --
>
> THE COURT: What circumstances are you basing that on now that you didn't know three or six months ago?
>
> [MOTHER'S COUNSEL]: Since the May 21st, two thousand -- well, since the report came back that this custody investigation would not be conducted, an interview on the phone. So the report May 21, 2012.
>
> THE COURT: Okay. So that's more than a month from now. Why didn't you put in a request for an ex-parte motion to shorten time? That's more than four weeks. And then that way I wouldn't have had [Father] and the kids flown back here if we were going to push this trial off so that we can get all of this done. But I specifically ordered him at his own expense to fly the kids back.

The court awarded Father sole physical and legal custody of Son and Daughter, explaining that this is "a very complex case on which I have to make a decision based upon the best interests of the children. And right now the only evidence that I have before me is I have -- although we have allegations, we have no convictions for any domestic abuse against father."

In the family court's November 30, 2012 Findings of Fact and Conclusions of Law, the family court found that Father and the court custody investigator were credible witnesses, but Mother was not. The family court further found that it was in

-17-

Son's and Daughter's best interests to award to Father their sole physical and legal custody, with Mother having reasonable visitation. The family court also determined that Mother's oral motions during closing argument to extend the trial and to appoint a guardian ad litem were untimely and were therefore denied. The family court's decision was set forth in an August 23, 2012 Order Re: Custody, Visitation, and Support Orders After Voluntary Establishment of Paternity, awarding sole legal and physical custody of Son and Daughter to Father.

## C. ICA appeal

In her opening brief, Mother argued the family court erred in restricting the trial time of each party. Citing Doe v. Doe, 98 Hawaiʻi 144, 155, 156, 44 P.3d 1085, 1096, 1097 (2002), in which this court cautioned "that adherence to a time schedule must be tempered by the circumstances of the proceeding as it unfolds, since circumstances cannot always be accurately predicted ahead of time," Mother argued that "she could have described [Father's] 'extreme anger issues' and how he was 'excessively abusive to her, her older son and [Son]," if permitted to complete her testimony. Mother maintained that she had intended to call the Honolulu Police Department detective who investigated Father's sexual abuse allegations against Mother's Older Son to testify regarding the lack of evidence to support Father's allegations.

Father filed, through counsel, a notice that he opposed all relief sought by Mother but would not be submitting an Answering Brief.

In a Summary Disposition Order, a majority of the ICA affirmed the family court's August 23, 2012 Order.  Specifically, the ICA held that the family court did not err in limiting the time at trial and denying Mother's oral motion to extend trial.  According to the ICA, Doe was distinguishable from the instant case on the following grounds:

> In the case before us, Father testified but did not present any other witnesses, whereas in Doe v. Doe, the majority of the time was used in direct and cross-examination of the father's witnesses.
> Also, in this case, when the family court warned Mother's counsel that time was running out, counsel did not question Mother regarding any alleged violence, but instead, asked about Son and Daughter's passports, whether Mother intended to remain in the country, and other questions unrelated to the issue of family violence.

The ICA then noted that Mother made no offer of proof and gave no specifics as to the type of testimony expected of Mother or remaining witnesses other than that they "had something to say about domestic violence."  The majority contrasted this with the situation in Doe, where the mother asserted that remaining witnesses had direct personal knowledge of the father's abusive personality and submitted affidavits describing personal accounts of witnessing assaultive behavior.  Finally, the ICA concluded that Mother's case was not harmed by her inability to call the detective to testify about the lack of evidence

-19-

supporting Father's allegations that Older Son sexually abused Son and Daughter, as this testimony would be duplicative of information already in the custody investigation report.

In a dissenting opinion, Chief Judge Nakamura concluded that the question of custody was too important and the proper determination of the children's best interests too complex for the family court to inflexibly limit the time for trial. Noting that Father and Mother presented diametrically opposing claims and evidence regarding each other's fitness as a parent, Chief Judge Nakamura pointed out that the family court could only determine the best interests of Son and Daughter by resolving those conflicting claims and evidence, which turned on the family court's assessment of whether Father or Mother was more credible. Chief Judge Nakamura concluded that the family court could not properly determine the best interests of the children while cutting short Mother's case and precluding her from introducing additional evidence on her and Father's fitness as parents, and their history of family violence.

## II.  Standard of Review

A trial court has discretion to set reasonable time limits for trial. <u>Doe v. Doe</u>, 98 Hawai'i 144, 155, 44 P.3d 1085, 1096 (2002); Hawai'i Rules of Evidence (HRE) Rule 611 (1993). Accordingly, limitations on the time set for trial are reviewed for abuse of discretion. A court abuses its discretion if it

"clearly exceed[s] the bounds of reason or disregard[s] rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Hawaiʻi 85, 114, 839 P.2d 10, 26 (1992).

### III. Discussion

Mother argues that the family court erred in limiting the time for testimony and thereby excluding testimony bearing on the best interests of Son and Daughter. Mother acknowledges that the family court had authority and discretion to set a reasonable time limit for trial, but argues that such authority must be tempered with due regard for the rights of litigants and the best interests of children. For the reasons set forth below, we conclude the family court abused its discretion in limiting the time for trial to three hours.

Our decision in Doe v. Doe is highly instructive. In Doe, the family court set a half-day evidentiary hearing on a mother's and father's competing custody motions. 98 Hawaiʻi at 146, 44 P.3d at 1087. Proceeding first, the father and all of his witnesses were able to testify. Id. at 147, 44 P.3d at 1088. Though the mother was able to testify regarding alleged abusive behavior by the father, when she tried to call her next witness, the family court interrupted her and stated, "I think your time is up," then concluded the proceedings. Id. Mother did not object. Id. at 147, 154, 44 P.3d at 1088, 1095. The family

-21-

court later granted the father's custody motion while denying the mother's motion, thereby confirming sole legal and physical custody of the child to the father, with visitation rights to the mother. Id. at 148, 44 P.3d at 1089. The mother thereafter filed a motion for new trial, reconsideration, and/or relief from judgment, seeking an opportunity to present her witnesses' testimonies to the court, which the family court denied. Id.

On appeal, this court acknowledged that "the court had the authority to set a reasonable time limit for trials and hearings." Id. at 154, 44 P.3d at 1096. However, this court also noted that the family court's denial of the motion for new trial "resulted in the exclusion of testimony of witnesses bearing upon the issue of family violence and, inferentially, the best interest of [the c]hild." Id. More specifically, this court noted that the mother had submitted affidavits indicating that her witnesses would have testified about the father's alleged abuse of the mother and its effect on the child. Id. at 156, 44 P.3d at 1097. Concluding that "[e]vidence supporting such allegations was pertinent to whether Father should have sole legal and physical custody of [the c]hild[,]" this court vacated in part the family court's ruling, and remanded for further proceedings on the mother's alternative custody motion. Id. at 158, 44 P.3d at 1099. Notably, this court cautioned the family court that "adherence to a time schedule must be tempered by the

-22-

circumstances of the proceeding as it unfolds, since such circumstances cannot always be accurately predicted ahead of time." Id. at 156, 44 P.3d at 1097.

Here, as in Doe, the half-day limitation on the time for trial was set well in advance. The excluded testimony related to alleged abuse and had a direct bearing on the best interest of the child. See id. at 154-55, 44 P.3d at 1096-97. Nevertheless, the ICA concluded that Doe is "unlike the instant case" for four reasons: (1) in Doe, the majority of trial time was used in direct and cross-examination of the father's witnesses, whereas here, Father did not present any other witnesses; (2) here, Mother's counsel was advised that time was running out, but did not question Mother regarding any alleged violence; (3) Mother bore the burden to overcome the rebuttable presumption that Son and Daughter should not be placed in her custody; and (4) Mother's counsel provided no offer of proof regarding the further testimony that would be provided by Mother or her remaining witnesses.

None of these factual distinctions override the critical similarity between Doe and the instant case: that "the family court's ruling resulted in the exclusion of testimony of witnesses bearing upon the issue of family violence and, inferentially, the best interests of [the children]." Doe, 98 Hawaiʻi at 154, 44 P.3d at 1096. As this court has long held, in

-23-

child custody cases, "a guiding principle for family courts in awarding custody under Hawaiʻi law is the best interest of the child."  HRS § 571-46 (Supp. 2011); Doe, 98 Hawaiʻi at 155, 44 P. 3d at 1096.  "Thus, in custody proceedings, 'the paramount consideration . . . is the best interests of the child.'"  Doe, 98 Hawaiʻi at 156, 44 P.3d at 1097 (emphasis added) (quoting In re Doe, 52 Haw. 448, 453, 478 P.2d 844, 847 (1970)); see also Fujikane v. Fujikane, 61 Haw. 352, 354, 604 P.2d 43, 45 (1979) ("The critical question to be resolved in any custody proceeding is what action will be in the best interests of the child." (citation omitted)); Yee v. Yee, 48 Haw. 439, 441, 404 P.2d 370, 372 (1965) ("In any custody proceeding, the welfare of the minor children is of paramount consideration." (citation omitted)); Dacoscos v. Dacoscos, 38 Hawaiʻi 265 (Haw. Terr. 1948) (stating that, in custody cases, the "general rule [is] that the welfare of the child has paramount consideration").  Here, as in Doe, the main issue is whether the excluded testimony was pertinent to the bests interests of the children.

The similarity between the instant case and Doe with respect to this critical issue supersedes differences between the two cases regarding other important issues, such as whether one party called more witnesses than the other or had more time to present its case.  Moreover, Mother's decision to question witnesses about matters other than Father's alleged domestic

-24-

violence does not render Doe inapplicable to the instant case.

As discussed infra, Mother was able to elicit testimony that

addressed the best interests of the child.  The ICA also sought

to distinguish this case from Doe on the basis that Mother,

unlike the mother in Doe, had to overcome the rebuttable

presumption that the children should not be placed in her

custody.  This distinction also does not render Doe inapplicable.

Doe's holding does not depend on the existence or allocation of a

rebuttable presumption against custody, nor do we find any

principled reason to so hold.  Finally, the ICA sought to

distinguish this case from Doe by pointing out that the mother in

Doe asserted that her remaining witnesses had direct personal

knowledge of the father's abusive behavior, while no specific

offer of proof had been made regarding remaining witnesses in the

instant case.  But here, Mother herself was one of the remaining

witnesses.  She would have had personal knowledge of the domestic

violence allegedly committed against her by Father, and had said

so in statements included in the CIU report and briefly on the

witness stand before the court prematurely stopped her

testimony.[2]  No offer of proof was thus necessary in the instant

---

[2]      Additionally, to the extent the ICA suggested that further
testimony on domestic violence would be duplicative of the CIU report, it
should be noted that the family court's assessment of the domestic violence
issue depended on the credibility of Mother and Father, which would be
difficult to determine absent Mother's testimony on this issue.  Also, as the
family court acknowledged in court, no direct evidence of family violence by
(continued...)

case to indicate to the family court that Mother had personal

knowledge of Father's alleged assaultive behavior.  In short, <u>Doe</u>

is applicable here despite the factual distinctions noted by the

ICA.

Similar to this court in <u>Doe</u>, other state courts have

held that judges must be cautious in imposing time limits in

family law cases involving the custody of children:

> The public and private interests in cases involving
> the custody and care of children are enormous.  There
> are few other matters which exceed the interests of a
> spouse pursuing a claim for custody or primary care
> of a child.  Furthermore, the public has an abiding
> interest in the future of its children, and the
> State, by implication, is a quasi-party to each
> dissolution action. . . .
>
> . . . Justice cannot always be achieved within the
> orderly environment of an assembly line.  The
> importance of evidence is often not understood until
> all the evidence is heard.  Thus, judges must not
> sacrifice their primary goal of justice by rigidly
> adhering to time limits in the name of efficiency.

<u>In re Marriage of Ihle</u>, 577 N.W.2d 64, 67-68 (Iowa App.

1998)(citations omitted); <u>see also</u> <u>In re Marriage of Finer</u>, 893

P.2d 1381 (Colo. App. 1995) (holding that litigants are entitled

to have sufficient time to make an orderly presentation of their

case, regardless of overcrowded dockets and a trial court's

obligation to move matters before it as rapidly as possible).

Federal courts have similarly held that time limits on

witness testimony must be informed and justified, and

---

[2](...continued)
Father was introduced by testimony from other witnesses, and Mother presumably
could have provided such testimony.

sufficiently flexible to ensure a fair trial.  The Court of
Appeals for the Ninth Circuit has noted that, "Although district
courts have discretion to impose rules to expedite completion of
trials, we caution that they must not adhere so rigidly to time
limits as to sacrifice justice in the name of efficiency."  Gen.
Signal Corp. v. MCI Telecomms. Corp., 66 F.3d 1500, 1509 (9th
Cir. 1995).  The Court of Appeals for the Third Circuit has held
that "a district court should impose time limits only when
necessary, after making an informed analysis based on a review of
the parties' proposed witness lists and proffered testimony, as
well as their estimates of trial time."  Duquesne Light Co. v.
Westinghouse Elec. Corp., 66 F.3d 604, 610 (3d Cir. 1995).

       Here, the family court's rigid time limits do not
appear to reflect an informed analysis of the time necessary to
afford each party a full and fair opportunity to present their
case.  The family court decided on February 13, 2012 that time
for trial would be half a day, starting at 1:30 p.m.  Thus, the
court limited the time for trial more than four months before
Mother and Father submitted their respective witness lists on
June 15 and June 18, 2012.  The record reflects that the family
court set the time limit after a conference with the parties'
counsel regarding the return of the CIU report, but contains no
clear indication that the court made an informed decision on

-27-

trial time after consulting with the parties, or that the parties agreed to the time limit.

In addition, pursuant to Doe, the family court was required to consider the "circumstances of the proceeding as it unfold[ed]," id. at 156, 44 P.3d at 1097, in determining whether Mother had sufficient time to present her case. Instead, the family court adhered to the time schedule imposed long before trial began or the number of expected witnesses was established, and did so even after it became apparent that Mother would be unable to fully present her case. While Mother did not object to the three-hour time limit prior to trial, or move for more time prior to the court's warnings that her limited time was running out, neither did the mother in Doe. See 98 Hawai'i at 147, 44 P.3d at 1089. Furthermore, the family court here should have reasonably foreseen that three hours might not be enough time to conclude a trial that the court readily conceded was "a very complex case on which I have to make a decision based upon the best interests of the children." Doe states that "if counsel believe that relevant evidence must be heard after the time set for the hearing has expired, they must move for an extension of time." Doe, at 154, 44 P.3d at 1095. In the instant case, Mother orally moved for an extension of time but the court denied the motion.

Indeed, the family court's reasons for prematurely ending the testimony were not justified under the circumstances of this case. First, the family court explained its decision to halt testimony and deny Mother's motion to extend time by saying that Mother had been warned of time constraints and chose to call other witnesses. However, to the extent the family court made this determination based on its belief that Mother wasted time on unnecessary witnesses, we disagree. Each witness provided relevant testimony on two critical issues: (1) Mother's ability to care for Son and Daughter, and (2) Father's alleged physical abuse of Mother. Indeed, the family court had noted that it wanted to hear testimony on how Mother cared for Son and Daughter.

The testimony on Mother's ability to provide appropriate care and Father's alleged history of domestic violence and false allegations bears directly on the paramount consideration in the custody proceedings, i.e., the best interests of Son and Daughter. For example, pursuant to HRS § 571-46(a)(9), the protective order awarded to Father against Mother on December 9, 2011, after a finding that there was past domestic abuse and a threat of harm to Father from Mother created "a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole

custody, joint legal custody, or joint physical custody with [Mother]." Moreover, Father testified that he sought treatment for Son and Daughter after they told him that Older Son and one or more of Older Son's friends had physically and sexually abused them, and that Father referred the matter to the police for investigation. Father had also alleged that Mother physically abused Father, and had obtained a protective order against Mother.

Given the presumption created by HRS § 571-46(a)(9), that custody should not go to Mother, Mother had to demonstrate she posed no threat to Son and Daughter, and that placing them in her care and custody would not be detrimental to their best interests. In this regard, Mother's questioning of the court custody investigator was necessary because it elicited testimony to discredit Father's allegations of abuse. As the investigator testified, Father's former wife related that Father had similarly accused her of abuse after their relationship ended.

Mother's witnesses also provided corroboration of her own allegations that Father had physically abused her, which likewise bore directly on the issue of the children's best interests. After all, Father's protective order did not negate the domestic violence allegations by Mother and Older Son against Father, or the reasonable inferences that could be drawn from the

testimony of Mother's witnesses who described her bruises following disputes with Father.  Further, Mother's questioning of the court custody investigator elicited testimony on how Father had physically abused his former wife, who was afraid that Father would retaliate against her for her participation in the instant case.

Additionally, Mother used her trial time to establish that the CIU report was flawed, and its recommendations suspect, because the investigator had not observed Father's interactions with Son and Daughter or verified their living conditions in Texas before recommending that Father have sole physical and legal custody of Son and Daughter.  As the investigator admitted, a home visit is one of the most important steps in a custody investigation, but one was never done here.  The investigator also acknowledged that she had not interviewed the children and thus had "no idea how the children are doing in Texas[.]"  In short, Mother's witnesses offered relevant testimony on issues essential for the trial court to consider before making its custody determination.

Second, the family court justified its decision to not schedule further proceedings out of concern that requiring Father, Son, and Daughter to return to Hawaiʻi from Texas would pose a hardship to them.  Nevertheless, that hardship must be

balanced with Mother's right to have a fair and reasonable opportunity to present her case, especially when the custody and future of two of her children were at stake. After Mother moved for an extension of time and briefly explained why previous witnesses had been necessary, the court responded, "Well, I cannot go beyond 4:30." Mother later renewed the motion to extend time, stating that "[t]hree hours is not enough for this trial. This trial involves complex issues." The court stated that Mother had chosen to call witnesses who took up time that could have been allocated to Mother, and that Father and the children had come from Texas for the trial. The court denied the motion for more time and stated that, "To have them come back another time because the allocation of time wasn't properly used would be unfair to especially the children." The family court further indicated that "if there was some other situation, I may be inclined [to grant an extension of time]," but that it was not willing to do so in the instant case because the court had ordered Father, Son, and Daughter to fly to Hawaiʻi from Texas for the proceedings. There is no indication that the family court considered any other options, such as requiring Mother to pay a portion of Father's travel expenses, rather than rigidly enforcing its time limit, despite its clear recognition that this case was complex. Nor is there any indication on the record that

Father objected to the prospect of returning for additional proceedings.

Important constitutional interests provide additional reason for providing parents a full and fair opportunity to present their case in custody decisions.  Indeed, a parent's right to the "care, custody and control" of his or her child is a fundamental liberty interest protected by the United States Constitution.  Troxel v. Granville, 530 U.S. 57, 65 (2000) ("[T]he interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court.").  This court has also recognized that independent of the United States Constitution "parents have a substantive liberty interest in the care, custody, and control of their children protected by the due process clause of article 1, section 5 of the Hawaiʻi Constitution.[3]  Parental rights guaranteed under the Hawaiʻi Constitution would mean little if parents were deprived of the custody of their children without a fair hearing."[4]  In re Doe,

_____

[3]     Article 1, section 5 of the Hawaiʻi Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry."

[4]     The Concurring Opinion proposes a bright-line rule under which any time limits in child custody cases involving allegations of domestic violence would be unconstitutional.  Concurring Opinion (Concur. Op. at 40-42]
(continued...)

99 Hawaiʻi 522, 533, 57 P.3d 447, 458 (2002).

Given the important constitutional interests and the factual circumstances of this case, the court's enforcement of its time limit was not reasonable.  As Mother notes in her application, additional time for testimony would have allowed her to describe Father's "extreme anger issues" and abuse of her and Older Son, including more than 50 alleged incidents of domestic violence, some of which included choking, suffocation, punching,

---

⁴(...continued)
Respectfully, it does not appear that any other court has adopted, or even considered, the bright-line rule proposed by the Concurring Opinion.  In fact, an overwhelming number of jurisdictions have recognized that trial courts have the discretion to set reasonable time limits in child custody cases, but that discretion must be balanced against a party's due process rights to a fair and reasonable opportunity to be heard.  See, e.g., In re Marriage of Ihle, 577 N.W.2d at 67 (holding that it is within the discretion of the trial court to apply limits to the length of trial, provided the decision comports with due process considerations); In re ARF, 307 P.3d 852 (Wyo. 2013) (trial court's decision to limit paternity action, in which father sought child custody and support, to a one-day trial in which parties would be afforded 160 minutes to present their case did not violate father's due process right to a meaningful hearing); Goodwin v. Goodwin, 618 So. 2d 579 (La. Ct. App. 1993) ("The due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution guarantee[] litigants a right to a fair hearing.  However, 'due process' does not mean litigants are entitled to an unlimited amount of the court's time."); Young v. Pitts, 335 S.W.3d 47, 60 (Mo. Ct. App. 2011) (in case involving allegations of sexual abuse, court held that "time limitations placed on presentation of evidence are matters within the motion court's discretion and will only be reversed for an abuse of that discretion"); Moore v. Moore, 757 So. 2d 1043, 1046 (Miss. Ct. App. 2000) (in case involving allegations of domestic violence, court held father's due process rights were not violated by trial court's time limitations); Wolgin v. Wolgin, 719 S.E.2d 196, 199 (N.C. Ct. App. 2011); Varnum v. Varnum, 586 A.2d 1107, 1115 (Vt. 1990)(in case involving allegations of domestic violence, court held father's due process rights were not violated by trial court's time limitations); cf. Hicks v. Commonwealth, 805 S.W.2d 144, 151 (Ky. Ct. App. 1990) ("A trial court clearly has the power to impose reasonable time limits on the trial of both civil and criminal cases in the exercise of its reasonable discretion.  As long as these trial time limits are not arbitrary or unreasonable we will not disturb the court's decision on review." (citation omitted)).

slapping, "body slamming," and rape.  Additional time would also have allowed Mother to rebut Father's accusations that she abused Son and Daughter, and that Older Son sexually abused Son and Daughter.  Mother further asserts that additional time would have allowed the police detective to testify regarding the lack of evidence to support Father's allegations that Older Son abused Son and Daughter.

Finally, we note that Mother and Father presented diametrically opposing evidence with regard to each other's fitness as a parent.  Both Father and Mother raised claims of abuse by the other, but none of the custody evaluators or medical practitioners involved in this case were able to resolve these claims.  Father testified at some length regarding the children's schooling, extracurricular activities, and the therapy they received for having been abused.  However, because Father moved the children to Texas, the state custody evaluators were never able to speak with children or evaluate their living situation or behavior with Father.  Father also did not provide any corroborating evidence with regard to the children's welfare in his care.  While such corroboration is not necessary for a court to determine the best interests of a child, the absence of any corroboration in this case highlights the fact that the family court's determination hinged on the credibility of Mother and

Father.

In order for the court to determine the best interests of the children, it needed to properly consider the competing evidence on each party's fitness as a parent. Excluding further witness testimony on behalf of Mother prevented the family court from considering relevant evidence. In other words, by cutting short Mother's testimony, the family court curtailed its own opportunity to fairly judge Mother's credibility and properly decide how the best interests of Son and Daughter could be served. Under these circumstances, the three-hour time limit unreasonably deprived Mother of a fair opportunity to present her case and prevented the family court from being able to determine the best interests of the children in this case.

Although the family court can set reasonable time limits to a trial in a child custody case involving allegations of domestic violence, the time limits must be based upon an informed analysis of the time necessary to afford the parties a full and fair opportunity to present their case. And when a party moves for an extension of time in such cases, the family court must consider whether the proposed testimony is pertinent to the best interests of the child when deciding whether or not to grant the motion. By adhering to a rigid time limit, cutting short Mother's testimony and denying Mother's motion to extend

trial time for testimony regarding issues of family violence and their bearing on the best interests of Son and Daughter, the family court abused its discretion and "'disregarded rules or principles of law or practice to the substantial detriment of a party litigant[,]. . . and its decision . . . clearly exceeded the bounds of reason."[5]  Doe, at 156, 44 P.3d at 1097.

---

[5]    The Concurring Opinion also concludes the Hawaiʻi Rules of Evidence (HRE) and the Hawaiʻi Family Court Rules (HFCR) do not permit the family court to impose reasonable time limits.

The Concurring Opinion states that the use of time limits is not provided for by the Hawaiʻi Rules of Evidence (HRE), citing in particular to HRE Rule 611 and Weinstein's Federal Evidence to maintain that HRE and the Federal Rules of Evidence (FRE) Rule 611 "do[] not empower the court to use those restrictions to limit non-cumulative, probative evidence."  Concur. Op. at 11 (citing 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 611.02[2][b][ii] (2d ed. 2014)).  Weinstein explains in regard to Rule 611 that "Time limits on the presentation of evidence may be imposed to avoid wasting time and to ensure that a case is speedily and efficiently heard," so long as the trial court does not abuse its discretion by "exclud[ing] non-cumulative, probative evidence because its introduction would take longer than the court had set aside for trial."  4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 611.02[2][b][ii] (2d ed. 2014).  In fact, the Vermont Supreme Court has read Vermont's equivalent of Rule 611 as granting trial courts the ability to set reasonable time limits on the presentation of evidence at trial.  See Varnum v. Varnum, 586 A.2d 1107, 1115 (Vt. 1990) ("We think that the power granted by Rule 611(a) includes the authority to set reasonable limits on the consumption of time in examining witnesses.  We agree with the observation of the Maine Supreme Judicial Court that counsel left to their own devices may 'proceed at a pedestrian pace unsuited to times when court calendars are crowded and the costs of litigation to the parties and to the taxpayer are unreasonably high.'" (citations omitted)).

The Concurring Opinion also concludes that the Hawaiʻi Family Court Rules (HFCR) implicitly disallow the use of time limits, when those rules are compared to the Hawaiʻi Rules of Civil Procedure (HRCP), and in particular, HRCP Rule 16, which authorizes the court to establish time limits.  Concur. Op. at 17-20.  Although HFCR Rule 16 does not include an express provision regarding time limits, the absence of a specific provision should not be read to preclude the family court from setting reasonable time limits under certain circumstances.  HFCR Rule 16 in fact omits other paragraphs in HRCP Rule 16 that refer to powers that clearly are not denied by implication based on their exclusion from HFCR Rule 16 (e.g., HRCP Rule 16(c)(11) allows the court to take appropriate action with respect to "the disposition of pending motions.").  Moreover, HFCR Rule 16 has a catch-all provision that

(continued...)

## IV.  Conclusion

We hold that the family court abused its discretion in denying Mother's motion for additional trial time.  Thus, we vacate the ICA's August 27, 2013 judgment and the family court's August 23, 2012 order, and remand to the family court for further proceedings.

Micky Yamatani
for petitioner

Michael A. Glenn
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Rom A. Trader



---

⁵(...continued)
authorizes the family court to take appropriate action with respect to "(7) Such other matters as may aid in the disposition of the action."  The catch-all provision grants the family court the necessary flexibility to do what is appropriate in each case, which may include setting reasonable time limits in certain situations.

Indeed, the Rules Committee, when it proposed the amendments to HFCR Rule 16, and this Court, when it adopted the rule, were likely aware of the fact that family court judges could impose reasonable time limits on child custody proceedings.  If the Committee or this Court intended to disallow the use of reasonable time limits, HFCR Rule 16 could have clearly said so.  In the absence of express language precluding the family court's use of reasonable time limits, we decline to read such a prohibition into HFCR Rule 16.