**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000635**
**23-DEC-2020**
**08:02 AM**
**Dkt. 71 MO**

NO. CAAP-16-0000635

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


CAIN AND HERREN, ALC,
Plaintiff/Counterclaim-Defendant/Appellee,
v.
JASON SAMUEL KING,
Defendant/Counterclaim-Plaintiff/Appellant


APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
(DC-CIVIL NO. 16-1-1016)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)


Defendant/Counterclaim-Plaintiff/Appellant, Jason Samuel King (**King**) appeals from the District Court of the Second Circuit's[1] (district court) August 26, 2016 judgment in favor of Plaintiff/Counterclaim-Defendant/Appellee law firm, Cain & Herren, ALC (**Firm**), and against King.

On appeal, King, who proceeded pro se at trial, argues that the district court erred by (1) denying his right to due process by refusing to allow him to present his personal testimony or any other evidence in support of his defense to the Firm's assumpsit claim and in support of his counterclaim, (2) refusing to allow his witness to testify and ruling such testimony was not relevant, and (3) awarding judgment to the Firm

---

[1] The Honorable Adrianne N. Heely presided.

by disregarding material testimony, and the existence of the counterclaim.

Upon review of the record on appeal and relevant legal authorities, giving due consideration to the issues raised and arguments advanced by the parties, we vacate the Judgment and remand for a new trial for the reasons set forth herein.

## I.  Background

The Firm filed an assumpsit claim against King on May 23, 2016, for  unpaid legal fees in the amount of $9,600.88.  On June 13, 2016, King, proceeding pro se, filed a counterclaim alleging the firm owed King $15,000, which the Firm denied.

The district court set a bench trial for July 25, 2016. The Firm identified as witnesses, associate attorney Michael Collins (**Associate Collins**), the Firm bookkeeper Cindy Stewart (**Bookkeeper)**, and any witnesses on King's witness list.  King's witness list consisted of himself, Associate Collins, Bookkeeper, and Firm partner David Cain (**Partner Cain)**.  King issued subpoenas for Partner Cain and Bookkeeper.

At the outset of trial, in response to the district court's questions, King explained that his counterclaim was for breach of contract, and that the amount represented the amount which the Firm had over-billed him.  At that time, the Firm informed the court that King had subpoenaed Partner Cain, requested that King tell the court when he wished to call Partner Cain as a witness, and that Partner Cain would be available within five minutes.  The Firm also stated it would be requesting an offer of proof as to Partner Cain, as the Firm felt that the testimony may not be relevant.

In his opening statement, King asserted that the Firm provided "shoddy representation" and that King made several attempts to meet with the Firm to address mistakes and overbilling by the Firm, which was the basis of his counterclaim for $15,000.  King argued that he requested to meet with Partner Cain about King's complaints about the billing and Collins' alleged incompetency, but Partner Cain never responded.

During the trial, the Firm presented its witnesses, Associate Collins and Bookkeeper, to establish the remaining balance due, through the fee agreement and invoices. King established through cross-examination that in March 2016, Associate Collins, King, and Bookkeeper did meet to address, inter alia, billing and purported mistakes in billing, Collins' alleged slow pace, and the possibility of adjusting King's balance due. Bookkeeper testified that her understanding at the end of that meeting, was that King was going to mark invoices indicating where he had questions or concerns. King elicited from Bookkeeper, that King had asked to meet with Partner Cain on four separate occasions regarding what King felt were errors, mistakes, and problems with the service from Associate Collins.

During the Firm's presentation of evidence, the district court indicated, more than once, that King would have an opportunity to testify and present his own case. During discussions regarding scheduling of further trial in the event trial could not be concluded the same day, the district court indicated that King would be given sufficient time for his "right to his day in court," and that the court would continue the trial to another day if necessary. The Firm concluded its case some time after 4:00 p.m.[2] King then requested to call his witness,

---

[2] The court noted the approximate 4:00 p.m. time, shortly before the Firm rested its case, as follows:

> THE COURT: And just a few more questions. I see it's coming up on the 4 o'clock hour.
>
> But there is some testimony that conversations were had that you were going to credit Mr. King for some time in an amount of thousands of dollars. Is that – do you recall any nature of that conversation?
>
> THE WITNESS [(Associate Collins)]: I can tell you that as an associate attorney, I'm not authorized to negotiate a forgiveness of debt. That –
>
> THE COURT: Do you remember that conversation at all?
>
> THE WITNESS: To be honest, your Honor, I don't remember the specifics of that conversation.
>
> THE COURT: Okay. Thanks.

(continued...)

Firm Partner Cain, to the stand, which the district court denied after hearing argument from both sides.[3]  The court ruled Partner Cain's testimony not relevant to the Firm's assumpsit claim or King's counterclaim.  The district court indicated that it felt that it "ha[d] enough to rule", and inquired about closing arguments.  Without addressing King's presentation of evidence, on either the Firm's claim or King's counterclaim, the court asked both sides if they would "waive closing arguments[.]"

King agreed, on condition, stating, "No, let's do our closing arguments.  And if we can wrap this up today, I'm open to that, your Honor."   The Firm agreed to waive its closing argument but requested rebuttal to King's closing argument, to which the district court agreed.  Then, without hearing King's closing, the court ruled against King, stating that it would "deny the counterclaim" and found in favor of the Firm for a

---

[2](...continued)
THE WITNESS:  Okay.

THE COURT:  So I think we should break now. Or how many more witnesses do you have? Otherwise, I'm – if you folks are ready to submit on what I've heard so far –

[FIRM'S COUNSEL]:  We -- we are done and we rest. And we'd move for a judgment on the testimony before the Court in favor of the plaintiff.

The transcript of the trial proceedings does not contain time references showing the beginning and end of trial, but only notes the times of recesses.  The court minutes of the proceedings also do not contain any time entries, except to note that trial was scheduled for 10:00 a.m., but the minutes do not indicate what time this case was actually called.

[3]     The following occurred with respect to King's attempt to call Partner Cain as a witness:

MR. KING:  I would like to call David Cain on the witness stand, your Honor.

THE COURT:  What's the relevance of that?

MR. KING:  To establish the incompetence in the representation that I received; to establish that I had reached out on multiple occasions to clear up this issue in a good way and was denied the respect of even a return phone call; to establish what David Cain's true intentions were in this relationship with me; to establish the lies that he told me right to my face, that I recorded; to establish a lot of shady practices going on between Cain & Herren and myself.

4

reduced amount.  King pointed out that he was denied closing arguments before the court ruled, and the district court apologized.  King presented his closing argument, after which the district court reiterated the same ruling in favor of the Firm.  This sequence of events happened as follows:

> THE COURT:  Okay.  Well, I'm going to respectfully deny the request to call Mr. Cain as a witness.  I don't think it's relevant to this particular claim of the assumpsit or the counterclaim of assumpsit.
>
> So, I'll note your objections, though, and your -- and I will hear closing arguments.  I think I have enough to rule.  Or if you want to waive closing arguments --
>
> MR. KING:  Let's do it.
>
> THE COURT:  -- then I'll --
>
> [FIRM'S COUNSEL]:  Let's waive closing arguments?
>
> MR. KING:  No, let's do our closing arguments.  And if we can wrap this up today, I'm open to that, your Honor.
>
> [FIRM'S COUNSEL]:  And, your Honor – your Honor, I would be happy to waive closing -- I made an extensive opening -- and then reserve the right to have a rebuttal closing for a few minutes after Mr. King.
>
> THE COURT:  Okay.  Thanks.  I heard from the witnesses, Ms. Christine Stewart as well as Ms. -- or Cindy Stewart as well as Mr. Collins.  I considered the Exhibits 1 -- Plaintiff's Exhibits 1 as well as Exhibit 3 through 29, as well as reviewed the pleadings and files as well as the submitted defense exhibits, and I'm going to, respectfully, deny the counterclaim.
>
> However, I do find credible Mr. Collins as well as Ms. Stewart . . . . I'm going to find in favor of the plaintiff in the amount of $7,696.41.
>
> This is the amount they are claiming minus the 375 that is unexplainable as well as the 1,972 -- $1,900.72, which is unexplainable, too.
>
> So, [Firm's counsel], may you prepare the order.
>
> I appreciate everyone working hard on this as well as being civil with each other, but I understand your frustration as well as your arguments, Mr. King. But I've ruled and I will –
>
> MR. KING:  Excuse me. Did --
>
> [CLERK]:  Can you repeat the --

MR. KING: Was I just denied my closing argument? I thought that I would -- she waived hers. I thought I was going to give a closing argument. What just happened there?

THE COURT: Okay. Well, quick closing argument, then. I thought you both were waiving.

Mr. KING: No. No.

THE COURT: So I apologize, but –

MR. KING: Well, it sounds like you've already made up your mind, your Honor. I mean, is there even any point in me wasting all of our time with a closing argument?

THE COURT: Well, I've given you the opportunity to do so, but I'm (inaudible) --

MR. KING: Yes, I would like that opportunity, please.

THE COURT: Yes, please.

MR. KING: I made every opportunity to clear up my bill with these people. The evidence shows me reaching out to them on multiple occasions, saying, hey, there's gross errors on my billing. Can I please sit down with someone to clear this up? On no occasion would they even grant me that.

I reached out to the leader of the firm. He didn't even return a phone call. I -- my evidence clearly shows a gross overbilling, where he's billing me an hour and a half to type out five sentences that came from a form letter. I think this clearly shows gross overbilling.

. . . .

King made further objections after the district court's ruling, saying that he had properly subpoenaed his witness, that he did not understand why the district court did not allow him to call his witness, and protested, "You're not even letting me argue my case, your Honor."[4]

---

[4]    The following exchange occurred after the court's second ruling, until the court was adjourned:

[THE COURT:] So the judgment will be entered as filed unless if you want to -- if Cain & Herren wants to work out something with Mr. King before filing the judgment, but I'm inclined to stick with my original ruling, the amount of 7,696.41, which represents the original claim minus the 19 -- or sorry.

MR. KING: I object, your Honor. You know –

(continued...)

## II. Standards of Review

### A. Evidentiary Rulings

Different standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.

Evidentiary decisions based on HRE Rule 403,[5] which require a "judgment call" on the part of the trial court, are reviewed for an abuse of discretion. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.

---

[4](...continued)
> THE COURT: Sorry.
>
> MR. KING: -- David Cain was important to my case. I did -- I followed the right procedure on subpoenaing him as a witness. This is wrong. David Cain, when I met with him, he wouldn't even look at my evidence. He wouldn't listen to my evidence. All he did was insult me.
>
> This is wrong, your Honor. This is the same thing, with all due respect, that you did to me in the rooster case. You're not even letting me argue my case, your Honor.
>
> THE COURT: Sir, you had the whole day to argue and I didn't --
>
> MR. KING: Actually, no, I didn't.
>
> . . . .
>
> MR. KING: How is it that I'm not allowed to call my witness? How is it that you've just decided that, no, that's not important? It's very important, with all due respect, your Honor.

[5]
> **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Hawai'i Rules of Evidence (**HRE**) Rule 403.

<u>Samson v. Nahulu</u>, 136 Hawai‘i 415, 425, 363 P.3d 263, 273 (2015)
(format altered) (footnote added) (brackets, ellipses, quotation
marks, citations omitted).

### B. Constitutional Law

"Questions of constitutional law are reviewed <u>de novo</u>,
under the right/wrong standard." <u>Matter of Gas Company, LLC</u>, 147
Hawai‘i 186, 198, 465 P.3d 633, 645 (2020) (citing <u>Blair v.
Harris</u>, 98 Hawai‘i 176, 178, 45 P.3d 798, 800 (2002)). "We
review questions of constitutional law under the right/wrong
standard by exercising our independent judgment based on the
facts of the case." <u>Andrade v. County of Hawai‘i</u>, 145 Hawai‘i 265,
274, 451 P.3d 1, 10 (2019) (quoting <u>Minton v. Quintal</u>, 131
Hawai‘i 167, 184, 317 P.3d 1, 18 (2013)).

### III. Discussion

### A. The district court erred in precluding King from presenting his witness.

King argues that the district court erred in refusing
to allow King to present Partner Cain's testimony because such
testimony was relevant to King's argument that there was an
agreement between Partner Cain and King to reduce the amount King
owed. King also argues that Partner Cain was a necessary witness
regarding King's counterclaim for overbiling and incompetent
representation. The Firm's counsel objected under HRE Rule 408,[6]

---

[6]     HRE Rule 408 provides:

> Evidence of (1) furnishing or offering or promising
> to furnish, or (2) accepting or offering or promising to
> accept, a valuable consideration in compromising or
> attempting to compromise a claim which was disputed as to
> either validity or amount, or (3) mediation or attempts to
> mediate a claim which was disputed, is not admissible to
> prove liability for or invalidity of the claim or its
> amount. Evidence of conduct or statements made in
> compromise negotiations or mediation proceedings is likewise
> not admissible. This rule does not require the exclusion of
> any evidence otherwise discoverable merely because it is
> presented in the course of compromise negotiations or
> mediation proceedings. This rule also does not require
> exclusion when the evidence is offered for another purpose,
> (continued...)

arguing that any discussions between Partner Cain and King were in the context of compromise, and that a tape-recorded conversation between King and Partner Cain, which King recorded without the consent of Partner Cain, was inadmissible. Without specifically ruling on these objections, the district court found Partner Cain's testimony not "relevant" to the claim or counterclaim.

While King's offer of proof as a pro se party was argumentative, conclusory, and appeared to contain irrelevant areas of potential examination, the district court was aware that King's theory of defense was that the Firm had over-billed him and that King disputed the amount owed. Through cross-examination, King had adduced evidence of his multiple attempts to discuss with Partner Cain his issues with the quality of the legal services, and a possible alleged adjustment to King's bill due to King's dissatisfaction with Associate Collins' pace of work.

Rather than exclude Partner Cain's testimony entirely, the district court should have allowed King to call Partner Cain as to King's claim of being overbilled for incompetent representation, which would be relevant under HRE Rule 402,[7] to proving or disproving the amount of the Firm's claim and/or with regard to King's counterclaim. King should have been allowed to make this showing by calling Partner Cain as a witness, subject to the court curtailing any objectionable aspects of the testimony under HRE Rule 403[8] or other applicable evidentiary

---

[6](...continued)
such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[7]    HRE Rule 402 provides, "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaiʻi, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

[8]    HRE Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

(continued...)

rules. While a <u>pro</u> <u>se</u> party must comply with evidentiary rules, a more flexible approach based on King's offer of proof as a layperson, was warranted. <u>See</u> <u>Lepere v. United Pub. Workers, Local 646, AFL-CIO</u>, 77 Hawaiʻi 471, 473 n.2, 887 P.2d 1029, 1031 n.2 (1995) (recognizing that the vast majority of courts tend to hold <u>pro</u> <u>se</u> litigants to a lower standard of accountability than attorneys (citations, internal quotation marks, and original brackets omitted)). Further, a trial court acting as a factfinder in a bench trial "is presumed not to be influenced by incompetent evidence." <u>State v. Antone</u>, 62 Haw. 346, 355, 615 P.2d 101, 108 (1980). Therefore, we conclude that the district court erred in its wholesale preclusion of Partner Cain's testimony.

**B. King was deprived of due process when the district court concluded the trial without allowing King an opportunity to present evidence.**

A "fair trial in a fair tribunal is a basic requirement of due process." <u>Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res.</u>, 136 Hawaiʻi 376, 380, 363 P.3d 224, 228 (2015) (quoting <u>Sifagaloa v. Bd. of Trs. of Emps.' Ret. Sys.</u>, 74 Haw. 181, 189, 840 P.2d 367, 371 (1992) (quoting <u>In re Murchison</u>, 349 U.S. 133, 136 (1955))). The specifics of that guarantee can vary depending on the circumstances, <u>id.</u>, and due process is not a fixed concept requiring a specific procedural course in every situation. <u>Medeiros v. Hawaiʻi Cty. Planning Comm'n</u>, 8 Haw. App. 183, 196, 797 P.2d 59, 66 (1990) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." <u>Id.</u>

HRE Rule 611 vests the trial court with the discretion to control the trial proceedings before it, by managing the order of witnesses and the presentation of evidence in order to "(1) make interrogation and presentation effective for the

---

[8](...continued)
considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Doe v. Doe, 98 Hawaiʻi 144, 155, 44 P.3d 1085, 1096 (2002) (quoting HRE Rule 611). While a trial court has the authority to set reasonable time limits for trials, this discretion is not unlimited and "must be balanced against the rights of the parties to present their cases on the merits." Id. at 155 n.12, 44 P.3d at 1096 n.12.

In this case, the Firm was able to present its entire case starting from approximately 10:00 a.m.[9] resuming at 2:00 p.m. after a lunch recess,[10] and resting at about 4:00 p.m. Even though the district court, throughout the trial, had informed and assured King that he would have an opportunity to present his case, that he would have his "day in court", that he would be able to explain or expand on evidence during his case rather than on cross-examination, none of this occurred. King was not allowed to present his own direct testimony under oath. King was not allowed to present his witness Partner Cain, even though Cain had been subpoenaed and was on a five-minute on-call notice to appear to testify. In ruling against King on the Firm's claim and King's counterclaim, the district court also made credibility findings in favor of the Firm's two witnesses who had testified, Associate Collins and Bookkeeper.

In this case, King was denied an opportunity to present his case on the counterclaim or defend against the Firm's claim, consistent with District Court procedural rules governing trial. See Rules of the District Courts of the State of Hawaiʻi Rule 17;[11] Hawaiʻi District Court Rules of Civil Procedure Rule 39.1.[12]

---

[9] The court minutes reflect that the trial was scheduled for 10:00 a.m. The trial transcript indicates the case was called some time before 10:19 a.m., and a recess was taken from 10:19 a.m. to 10:24 a.m., after which the parties presented opening statements.

[10] Lunch recess was taken 11:51 a.m. to 2:29 p.m., for lunch and so the court could attend to other matters at 1:30 p.m.

[11] Rule 17(a) of the Rules of the District Courts of the State of Hawaiʻi provides as follows:

(continued...)

This was not a situation like <u>Doe</u>, <u>supra</u>, where the time limits imposed by the trial court were found to be unreasonable, constituting an abuse of discretion.  Here, no case, not even an abbreviated or time-limited one, was permitted to be presented by King.  Therefore, we conclude that King was deprived of due process under these circumstances.  Because we vacate the Judgment on this ground, a new trial is warranted, and King's remaining point of error is moot.

---

[11](...continued)
> (a) *Sequence of presentation.* Subject to the orders of the court, which may alter the sequence of presentation of the case when there are numerous parties or for other reasons:
> (1) The plaintiff (or the prosecuting officer in a criminal case) shall have the right to make an opening statement. The defendant shall also have the right to make an opening statement, either immediately after the plaintiff's or the prosecuting officer's statement or at the beginning of defendant's case.
> (2) the plaintiff or prosecuting officer shall produce the evidence on his or her part.
> (3) The defendant may then open the defense and offer evidence in support thereof.
> (4) The parties may then respectively offer rebutting evidence only.
> (5) When the presentation of evidence is concluded, unless the case is submitted on either side or both sides without argument, the plaintiff or prosecuting officer shall open the argument; the defendant may then reply; and the plaintiff or prosecuting officer may conclude the argument, and in the conclusion shall confine themselves to answering any new matter or arguments presented by the defendant.

[12]     Hawai‘i District Court Rules of Civil Procedure Rule 39.1(a) reads as follows:

> (a) Subject to the order of the court, the sequence of presentation of the case shall be as follows:
> (1) The plaintiff shall have the right to make an opening statement.  The defendant shall also have the right to make an opening statement, either immediately after the plaintiff's statement or at the beginning of the defendant's case.
> (2) After the opening statement or statements the plaintiff shall produce the evidence on the plaintiffs part.
> (3) The defendant may then open the defense and offer the defendant's evidence in support thereof.
> (4) The parties may then respectively offer rebutting evidence only.
> (5) When the evidence is concluded, unless the case is submitted on either side or both sides without argument, the plaintiff shall open the argument; the defendant may then reply: and the plaintiff may conclude the argument, and in the conclusion shall confine itself to answering any new matter or arguments presented by the defendant.

## IV. Conclusion

Based on the foregoing, the August 26, 2016 judgment is vacated, and this matter is remanded for a new trial.

DATED: Honolulu, Hawaiʻi, December 23, 2020.

On the briefs:

Brianne L.O. Wong Leong,
Elizabeth S. Cuccia,
(Cain & Herren, ALC)
for Plaintiff/Counter-
claim-Defendant/Appellee

Peter Knapman
for Defendant/Counter-
claim-Plaintiff/Appellant

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge